# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | |
|---|---|
| Ross Abbott, College Libertarians at the University of South Carolina and Young Americans for Liberty at the University of South Carolina, <br><br> Plaintiff, <br><br> v. <br><br> Harris Pastides, Dennis Pruitt, Bobby Gist and Carl R. Wells, <br><br> Defendants. | Civil Action No. <br> 3:16-538-MBS <br><br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTIONS TO STAY DISCOVERY AND SCHEDULING ORDER DEADLINES** |

Defendants have moved for an order, pursuant to Rule 26(c) and Local Civil Rule 16.00(C), staying discovery and further scheduling order deadlines until such time as the Court adjudicates Defendants' Motions for Summary Judgment. (The Motions to Stay are docketed as ECF Nos. 28 and 37; the two Motions for Summary Judgment are docketed as ECF Nos. 27 and 36.) Plaintiffs have opposed the Motions to Stay. ECF No. 42. Plaintiffs' opposition to the Motions for Summary Judgment are due on November 14. *See* ECF No. 41 (text order regarding scheduling). Defendants submit the following reply in support of the motions to stay.

## ARGUMENT

### 1. Discovery is not required with respect to any of Plaintiffs' three claims.

Plaintiffs' opposition refers to several areas into which they would like to take discovery, but their memorandum is devoid of any indication that there are disputed issues about any facts material to the outcome of this case. Each claim will be discussed separately below.

1

As Plaintiffs note, ECF No. 42 at 2, they have asserted three claims: (a) an alleged damage claim arising from Plaintiff Abbott's being asked to meet briefly with Defendant Carl Wells following complaints about a "free speech event" put on by Plaintiffs with USC's permission[1]; (b) a facial challenge to USC policy STAF 6.24 and to the Carolinian Creed, and (c) a facial challenge to certain other USC policies, now repealed or modified.

USC has sought dismissal of all three claims, contending that (a) Defendant Wells, by asking Abbott to come in and discuss the context of the free speech event, did not violate any constitutional rights of the Plaintiffs, much less any clearly established constitutional rights, and therefore is entitled to qualified immunity. ECF No. 27-1; (b) there is nothing about STAF 6.24 which renders it facially unconstitutional, and the Carolinian Creed, STAF 1.02 (now in the process of being repealed as a USC policy), has never been regarded as anything other than a nonenforceable aspirational document. ECF No. 36-1; and (c) the challenged portions of the other policies (STAF 3.17 and 3.25) have been modified or repealed so as to eliminate even the possibility that they might be subject to a facial challenge. ECF No. 36-1. Defendants submit that no additional discovery is needed with regard to these three issues, and that Plaintiffs have not made a showing otherwise.

      **a.    Damage claim.**

With regard to the damage claim, the acts which purportedly damaged Plaintiff Abbott are well known to Plaintiffs and are not in dispute. Indeed, most of the facts related to that claim were set forth in the Complaint and its attachments. The few facts not referenced in the Complaint are to be found in the attachments to the summary judgment motion of Defendants Gist and Wells. Simply summarized, Plaintiffs with no difficulty obtained USC's permission to

---

[1] Plaintiffs characterize this claim as an as-applied claim.

conduct an event illustrating how certain manifestations of speech had been found objectionable in some quarters, especially in academic contexts. USC's office of Equal Opportunity Programs (EOP), which is the University office responsible for ensuring compliance with state and federal civil rights laws, received three electronic complaints on the day of the event, one from a University student and two made anonymously. One of the complaints alleged that the Plaintiff student organizations were "in front of the Russell house, with swastikas and engaging rudely with USC students, saying sexist and racist statements." Complaint, Exhibit N, ECF No. 1-14 at 8.

It is the duty of Defendant Wells, who is the Assistant Director of the EOP office, to inquire into whether on-campus incidents amount to harassment under the Civil Rights Act. In the course of that duty, he requested that Plaintiff Abbott come in and describe the context of the event, which Abbott did, in a relatively brief meeting which Abbott recorded. Defendants have submitted a transcript of the recording of the meeting as an exhibit. ECF No. 27-5. Not long thereafter, Wells advised Abbott by letter that the EOP office would not "move any further in regard to this matter," and "found no cause for investigating this matter." ECF No. 27-6. Nothing else has happened, and Abbott graduated from USC in the summer of 2016.

The summary judgment motion of Defendants Gist and Wells seeks to have the damage claim dismissed on the ground of qualified immunity, contending that Wells did not violate any constitutional rights of the Plaintiffs, much less any clearly established constitutional rights, and therefore is entitled to qualified immunity.[2] Specifically, those two Defendants contend that the minimal inquiry by Wells into the context of Plaintiffs' free speech event did not violate any

---

[2] Plaintiffs included Bobby Gist, Wells' supervisor, as a defendant, but made no allegations specifically with regard to him.

3

constitutional rights of Abbott or the two organizational Plaintiffs.[3] Moreover, there was clearly no First Amendment violation, because there was never any interference (by Wells or Gist or anyone else) with Plaintiffs' ability to conduct their free speech event.

Plaintiffs assert that the Defendants' discovery responses "did not include materials that shed light, one way or the other, on Defendant Gist's role and/or conduct" in the incident described above. ECF No. 42 at 3. This is simply incorrect, because Defendant Gist's discovery responses affirmatively indicated that he had no knowledge or, nor documents concerning, the incident at the time it occurred. In Defendant Gist's responses to Plaintiffs' First Interrogatories, he stated repeatedly that he was "not alleged to have been involved, and in fact was not involved, in any of the events which gave rise to this case," and that as a result he had no knowledge with which he could answer interrogatories and no documents responsive to Plaintiffs' document request. Gist responses, Exhibits 1 and 2, attached. Plaintiffs apparently believe that their free speech event caused quite a stir at USC, but in fact, as Wells' very brief review of the incident would indicate, it was regarded as a very minor matter which was quickly resolved without any adverse effect on any Plaintiff and without the involvement of any USC official other than Wells. In any event, it is the Defendants' contention that Defendants Wells' brief review of the free speech event violated no rights of Abbott and did not cause damage to him in any way.

The Supreme Court has held that "we have made clear that the driving force' behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009), citing and quoting *Anderson v. 232 Creighton*, 483 U.S. 635, 640, n. 2 (internal quotation marks omitted). Defendants' summary judgment motion based on qualified

---

[3] While Wells conducted a minimal inquiry regarding Abbott, he did not ask anyone connected with either of the two organizational plaintiffs to attend the meeting he held with Abbott.

4

immunity asserts precisely what the Court had in mind in this context, which is that Plaintiffs' damage claims are "insubstantial." *See also, e.g., Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991 (5th Cir. 1995)(if facts upon which defense of qualified immunity turns are not disputed, district court should rule on motion to dismiss without discovery).

Plaintiffs cite just one reported case, *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191 (4th Cir. 2006), in their discussion of qualified immunity. ECF No. 42 at 6-7. However, *Ingle* was an excessive-force case in which the Fourth Circuit remanded for discovery as to whether cameras installed in police vehicles on the scene recorded videotapes of the incident. In the present case, however, there is no question about what actually happened. Indeed, Plaintiff Abbott himself recorded the meeting between Wells and Abbott, removing any doubt about what transpired at the meeting. The Fourth Circuit has held that discovery might be permitted in cases involving a qualified immunity defense "where there is a material dispute over what the defendant did. . . . *DiMeglio v. Haines*, 45 F.3d 790, 795 (4th Cir.1995). *Ingle* is to the same effect, holding that "Rule 56(f) motions may be denied . . if the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle, supra,* 439 F.3d at 195.

Plaintiffs never actually argue that they are missing information which would create a genuine issue as to some material fact. Instead, and at most, they point only to questions they raise and to which they seek answers, without ever showing how the answers to those questions actually matter. One such question asked by Plaintiffs, as noted above, is whether Defendant Bobby Gist, about whom Plaintiffs allege no specific facts, might have been involved in this matter, even though, as discussed herein, he has denied any knowledge of this incident until after this case was filed. However, that alleged factual issue pertains only to whether Gist might

5

ultimately be among the persons found liable in the event that a constitutional violation is found to have occurred. If the Court were to hold, over Defendants' claim to the contrary, that a constitutional violation did occur, it would then be appropriate for discovery into any involvement by Defendant Gist to occur. At present, however, his involvement is not an issue that needs to be addressed.

### 2. Facial challenge to certain policies.

Under well settled authority in the Fourth Circuit and elsewhere, a plaintiff who makes a facial challenge to a legislative enactment is not entitled to discovery, because the challenge raises only legal questions. *Educ. Media Co. at Virginia Tech v. Swecker*, 602 F.3d 583, 588 (4th Cir. 2010) ("[A] facial challenge to an ordinance restricting commercial speech may be resolved as a question of law when the government meets the burden placed on it by *Central Hudson*" (quoting *Penn Advertising of Baltimore, Inc. v. Schmoke*, 63 F.3d 1318, 1322–23 (4th Cir.1995).[4] *Penn Advertising*, in turn, held that the district court did not abuse its discretion in refusing to extend billboard owner's time to conduct discovery on a plaintiff's facial challenge to an ordinance, because that facial challenge could be resolved as a question of law. Other jurisdictions are in accord. *See., e.g., Shelby Cty., Ala. v. Holder*, 270 F.R.D. 16, 19 (D.D.C. 2010)(discovery "unwarranted" where plaintiff brought only a facial challenge to a statute); *Gen. Elec. Co. v. Johnson*, 362 F.Supp.2d 327, 337 (D.D.C.2005) ("a facial challenge to the text of a statute does not typically require discovery for resolution because the challenge focuses on the language of the statute itself"); *New Hampshire Motor Transp. Ass'n v. Rowe,* 324 F. Supp. 2d 231, 232–33 (D. Me. 2004)(discovery . . . is not necessary to a ruling on a facial preemption

---

[4] The *Central Hudson* case referenced by the 4th Circuit, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980), pertains to the need for speech to be commercial speech in order to be regulated in certain ways. That concept does not apply in the present case.

challenge. . . . [S]uch a ruling examines only the express terms of the statute, not the actual effect of the law").

Plaintiffs do not suggest any reason why discovery is necessary in a case involving a First Amendment facial challenge. As the cases cited above indicate, that issue is solely one of law, and discovery is therefore not necessary regarding it.

### 3. The information which Plaintiffs claim Defendants did not fully produce is not related to any material factual issue.

Defendants submit that the contentions set forth above constitute a complete response to Plaintiffs' opposition, but also offer several comments about alleged deficiencies which Plaintiffs assert with respect to the written discovery served by Plaintiffs and to which Defendants responded. It is probably a complete answer to Plaintiffs' contentions that discovery is probably not necessary at all at present, but this additional information is provided to show that Defendants have made information available to the Plaintiffs (most of it was already in the possession of Plaintiffs even before being requested via interrogatories or document requests).

#### a. Privilege log.

Plaintiffs note that Defendants have "fail[ed] to provide a privilege log." ECF No. 42 at 4; ECF No. 42-1 at 5, ¶ 14 (same). Plaintiffs do not mention, however, that privilege was claimed for only one document, which was described as follows in Defendants Wells' response to Plaintiffs' requests for production:

> [T]here is a document prepared by this Defendant, after the filing of this action, for Defendants' counsel in this action, summarizing this Defendant's December 2015 meeting with Plaintiff Abbott. This Defendant objects to the production of that document on the basis of attorney-client privilege and attorney work product.

Defendants Wells' Response to Plaintiffs' Request for Production No. 6. Other than the claimed need for a document mechanically entitled "Privilege Log," Plaintiffs have not suggested that

any information of substance pertaining to this single document is missing from this response. Moreover, the document was obviously prepared for counsel and is equally obviously subject to both the attorney-client privilege and the work product privilege.

### b. Redactions based on the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, et seq.

Plaintiffs note that Defendants redacted information about three students in documents produced, based on FERPA, the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, et seq. ECF No. 42 at 4. Defendants' counsel has advised Plaintiffs' counsel on several different occasions that practically all of the redacted information, i.e., the identification of two students, could be supplied by Plaintiff Abbott if his counsel would only contact him and ask him for the names of those students. However, Plaintiffs' counsel stubbornly, and rather nonsensically, has refused to use that simple approach, instead insisting that the Court and the parties go through the extensive process of obtaining a consent order under FERPA. This unreasonableness aside, however, this is another matter about which Plaintiffs point only to an allegedly-unanswered discovery question, rather than making the required showing of how the requested information might show the existence of a genuine issue as to a material fact. Plaintiffs' other citations to discovery requests which they claim have not been answered to their satisfaction are similarly devoid of any such showing of how a material factual issue might be involved.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that their motions to stay discovery should be granted.

Respectfully submitted,

*s/Carl F. Muller*
Carl F. Muller, Fed I.D. #3602
Carl F. Muller, Attorney at Law, P.A.
607 Pendleton Street, Suite 201 (29601)
P.O. Box 1717
Greenville, SC 29602
864.991.8904
carl@carlmullerlaw.com

and

DAVIDSON & LINDEMANN, P.A.

*BY:  s/ Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II, Fed. I.D. No. 425
KENNETH P. WOODINGTON, Fed. I.D. No. 4741

DAVIDSON & LINDEMANN, P.A.
1611 DEVONSHIRE DRIVE, 2ND FLOOR
POST OFFICE BOX 8568
COLUMBIA, SOUTH CAROLINA 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
T: 803-806-8222
F: 803-806-8855

ATTORNEYS for Defendants

November 7, 2016